## GEORGE M. BRIGGS

*vs.*

## LAKE AUBURN CRYSTAL ICE COMPANY.

Androscoggin. Opinion November 21, 1914.

*Collision. Due Care. Escape. Exceptions. Negligence.*

Action of tort to recover for injuries sustained by reason of a collision when the plaintiff's team was overtaken by the defendant's in a public highway. The defendant's team escaped from the control of its driver while left unhitched on the defendant's premises, and thence ran away through a private way to the public street.

*Held:*

1. That the liability of the defendant depends, as in other cases of negligence, upon the degree of care exercised by it, and not upon the mere fact that the runaway team escaped from the private land of the defendant.

2. That the ordinance of the City of Auburn in regard to the care and control of teams upon the city streets has no application to the case at bar, as the defendant's team was not being driven upon a public street, but had escaped from its driver before the public street was reached.

3. That even if the ordinance had been violated it was not conclusive proof of the defendant's liability, but only evidence thereof.

4. That the exclusion of certain medical testimony, even if admissible, has been rendered immaterial by the verdict for the defendant.

On exceptions by the plaintiff.    Exceptions overruled.

This is an action on the case to recover for injuries to person and property alleged to have been sustained by the plaintiff, by reason of the negligence of defendant company in the management of one of its ice teams, as a result of which said team collided with the team of the plaintiff on the streets of Auburn, causing the injuries complained of.    The plea was the general issue.    The jury returned a verdict for the defendant, and the plaintiff had exceptions to the refusal of the presiding Justice to give certain requested instructions which are fully considered in the opinion.

The case is stated in the opinion.

*Oakes, Pulsifer & Ludden,* for plaintiff.

*Andrews & Nelson,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, JJ.

CORNISH, J.    The declaration in this case counts upon "the duty of the defendant to manage its said teams so that the same should not escape and run away and into persons lawfully upon and using the highways in said city of Auburn, but the said defendant unmindful of its duty in this regard then and there through its said servants and agents so negligently managed a pair of draft horses attached to a heavy ice cart, said negligence consisting in leaving said horses while so harnessed to said wagon standing unhitched and without the near presence of any driver or attendant to control said team and prevent its escape, if said horses should suddenly start to run away, that said defendant well knew said horses were liable so to do if so left, and by the exercise of reasonable care ought to have so known, that said horses did then and there escape and run away from the vicinity of the defendant's ice house situated in said Auburn near Turner Street in and upon said Turner Street," &c., and collided with the plaintiff's team causing the damage and injuries set forth.

The case was tried upon the issues raised by the declaration, negligence on the part of the defendant and due care on the part of the plaintiff.    The jury returned a verdict for the defendant and the case is before the Law Court on plaintiff's exceptions, which we will consider in their order.

1.   Refusal of the presiding Justice to give the following requested instruction:

"If the team of the defendant escaped from the control of its driver from the private premises of the defendant and thence ran away into and upon the public highways of the city of Auburn said team was not lawfully upon said highways." It is admitted that the defendant had a large ice house situated on private land controlled by it, from which a private way led and connected with the public streets of Auburn; that on the day of this accident the driver of the defendant's team came to this ice house to replenish his load and backed his team against a platform extending across one end of the ice house, hung up his reins on a hook in his cart, and went into the ice house to get the ice. In his absence the horses ran away from the ice house premises, followed the private way out to the public streets, and overtook and collided with the plaintiff on Turner Street.

The first requested instruction is based upon the theory that as this team was upon the defendant's private premises when it started to run away, and escaped therefrom to the public street, it was as a matter of law unlawfully upon the street, and the defendant was absolutely responsible for any injuries it might cause, and the question of due care on its part cannot be considered. No such claim is alleged in the writ, and, even if it were, we cannot originate such a legal doctrine. It would be attended by too many absurdities. It would fix absolute liability upon the owner whose team might escape from his control when in his own door yard, although he may have taken every precaution which an ordinarily prudent person could take, but would leave his liability to be determined according to the rules of due care, if the same team might escape from this neighbor's door yard or in the public street. It would make the milk man an insurer when he loads his team in his own door yard, but liable simply for negligence when his team runs away while on the public street or in any other door yard on his route. We can see no reason requiring such a rule.

In support of this contention, the plaintiff invokes the common law rule that every man is bound to keep his cattle within his own close and to prevent them from escaping. It is undoubtedly the law in this State that while a land owner in the absence of prescription, agreement or assignment under the statute, is not obliged to fence his lands against an adjoining close, he is obliged to keep his own

flocks and herds within his close, and is liable for any trespasses they may commit if they escape. *Rust* v. *Low*, 6 Mass., 90; *Lyons* v. *Merrick*, 105 Mass., 71; *Little* v. *Lothrop*, 5 Maine, 356; *Knox* v. *Tucker*, 48 Maine, 373; *Harlow* v. *Stinson*, 60 Maine, 347. That doctrine however has no application to the case at bar because it applies to domestic animals roaming at will upon the owner's land and not to horses harnessed in a team. Then there was formerly a statute in this State providing a penalty for suffering animals to run "at large without a keeper in the highways," R. S., 1883, Chap. 23, Sec. 2, and actions were sustained where this statute was violated and injuries sustained thereby, as in *Jewett* v. *Gage*, 55 Maine, 538, where a hog in the highway frightened the plaintiff's horse. But that statute was repealed in the revision of 1903, and, were it now in force, it too could have no application to the facts in this case, as a runaway team cannot be considered as animals running at large. The statute was never intended to apply to such a condition. Impounding a runaway team would certainly be an anomaly.

In *Allen* v. *B. & M. Railroad*, 87 Maine, 326, the Court held that the plaintiff whose team had escaped from his premises to a public street, and thence across a public park to a railroad track, where the horse was killed by a locomotive, could not recover because the Railroad Company was not obliged to fence off its railroad from the park to keep off animals not rightfully in the park. The same doctrine is maintained in *Russell* v. *Maine Central R. R. Co.*, 100 Maine, 406. That is the extent of the decision and is unquestioned law; but the further statements as to the obligation of the owner under other conditions are merely dicta and not controlling in a case like that at bar. The rights of the plaintiff here depend upon neither the law applicable to animals escaping from a pasture, nor animals running at large, but upon the common law principles of negligence as applied to the existing facts. The Massachusetts Court says: "The general doctrine of the common law as to injuries done by domestic animals seems to be, that the owner is not liable unless he has been in some fault. He is liable for their trespasses when it was his duty to confine them and he has neglected to do so." *Barnes* v. *Chapin*, 4 Allen, 444.

In the case of runaway teams, the question is as set forth in the plaintiff's declaration, the degree of care and oversight exercised by the owner, and not the title to the precise spot from which the team

started.   Thus actionable negligence was held to be test of liability, in *Tenney* v. *Tuttle,* 1 Allen, 185, where defendant's horses, harnessed to a wagon, were left standing on his land near his house, without being tied and with no one in immediate charge, and escaped to the highway and injured a traveller; In *Coller* v. *Knox,* 222 Pa., 362, 23 L. R. A., N. S., 171, where a team was left standing in a private lane, and in *Miller* v. *United Rys. Co.,* 134 S. W., 1045 (Mo.), where the team was left in an open space near a public street.   In *Fallow* v. *O'Brien,* 12 R. I., 518, a horse escaped from an inclosure and injured a person on a highway.   In the course of the opinion the Court say:   "In the American cases cited, it seems to be recognized that it is the negligence of the owner of the animal straying in the highway which renders him liable for the injury inflicted by it, and that if he is guilty of no negligence he is subject to no liability.   In the case at bar the defendant had an undoubted right to keep his horse in the inclosure near the highway.   He had as much right to have it there inclosed as he had to drive it in the streets harnessed. But if, while driving it harnessed, it had escaped from his control without negligence on his part, and running away had injured the plaintiff, it is perfectly well settled that he would not be liable for the injury.   We do not see why he should be any the more liable because the horse, instead of escaping from his control, escaped from an inclosure where he was rightfully kept, unless there was some want of diligence in pursuing and recapturing it."

The same reasoning applies with even greater force to the case at bar.   The request was therefore properly refused.

2.   The second request for instruction reads:   "If while said team of defendant was passing in, through, along or across the public streets of the city of Auburn, the driver thereof was not enabled at all times to guide and restrain the same, by having sufficient reins or walking so near as to have constantly the control of said team, said team was not lawfully upon said public streets."

This request was based  upon a city ordinance prescribing the duty of drivers of teams upon the public streets, in substantially the same language, and was properly refused.   First, because it was inapplicable to the facts of this case, as this team was not being driven upon a public street, but had escaped from its driver before the public street was reached.   The ordinance contemplated an entirely different situation.   And second, even if the ordinance had

been violated, such violation was not conclusive proof of defendant's liability, but only evidence thereof. Failure to perform even a statutory duty is merely evidence of negligence, not negligence per se. *Carrigan* v. *Stillwell*, 97 Maine, 247; *Neal* v. *Rendall*, 98 Maine, 69; *Wood* v. *M. C. R. R.*, 101 Maine, 469; *Jones* v. *Co-Op. Assoc'n*, 109 Maine, 448.

The third and fourth requests involve the same points as the first and second already considered, while the fifth and sixth are based upon the city ordinance, which as we have determined, did not apply.

The charge clearly stated the legal rights of the parties on the question of defendant's negligence and of plaintiff's contributory negligence, and was without error.

The remaining exceptions relate to the exclusion of certain medical testimony, but as that affected merely question of damages, the verdict of the jury in favor of the defendant has rendered those questions entirely immaterial. *Young* v. *Chandler*, 104 Maine, 184.

The entry must therefore be,

*Exceptions overruled.*